CITY OF AURORA by and on behalf of
the People of the State of
Colorado, Plaintiff,

v.

Samuel Hansford ERWIN, Defendant.

Crim. A. No. 81–CR–190.

United States District Court,
D. Colorado.

March 5, 1982.

Patrick Kowaleski, City Atty., Debra De-
mirali, Asst. City Atty., Aurora, Colo., for
plaintiff.

John R. Barksdale, Asst. U. S. Atty., Den-
ver, Colo., for defendant.

## MEMORANDUM OPINION

WINNER, Chief Judge.

Defendant is charged with a violation of
an ordinance of the City of Aurora, and,
because he is a postman, an assistant Unit-
ed States Attorney removed the case to this
court where it was tried before a magis-
trate. Defendant was convicted and fined
$50, or, if defendant doesn't want to pay
the $50, he can contribute 20 hours of com-
munity service to an organization of his
choice. Now, the case is on appeal to this
court, and I will not be surprised if it goes
to the Tenth Circuit. The rules governing
appeals from magistrates trials say that the
review can be by listening to a tape, but in
this case advantage was not taken of that
cost saving device, and a 375 page tran-
script has been prepared.[1] What this case
has cost the taxpayers I hesitate to guess,
but, allowing reasonable compensation for
everyone's time, I am sure that a cost
accounting study would prove that it has
wasted many thousands of tax dollars. I
have read every word of the briefs and
transcript, and I must now take time to
write an opinion in this municipal court case

1. The transcript should be preserved by the
shorthand reporters' association as evidence of
the inadequacy of tape recordings as compared
with shorthand reporting.

which has cluttered the court's docket while important civil cases not entitled to priorities afforded criminal cases are put aside.

Defendant's prosecution arises from the antics of a 7-month old puppy answering to the titillating name of Heineken. Except for defendant and another postman, all other witnesses, including those called by the defendant, described Heineken as a playful puppy, and Magistrate Abram who saw and observed the witnesses found that Heineken was just a fun loving 7-month old puppy. He didn't believe defendant or his colleague, and, from my review of the record, I couldn't agree more, because, as Magistrate Abram commented, their testimony makes little or no sense.

Nine witnesses, including two doctors, were called to testify, and I shall not attempt to summarize the testimony of all of them, but some of the transcript is sufficiently hilarious that it deserves mention. It seems that 19-year old Beth Cheryl Simmons and 20-year old Kent Taylor were living in a trailer court. They owned a mongrel puppy named Heineken. The puppy was running loose in the yard while Mr. Taylor was painting the mobile home, and, when defendant approached, the puppy started barking at him. Erwin squirted Heineken with Halt, and, when the puppy ran to get away, defendant chased him and continued to dose him with Halt. Taylor didn't like it at all, and he told Beth to get his gun. [He didn't own a gun, and this request was a ploy to try to get Erwin to end his attack on Heineken.] At about that point, Erwin turned the Halt on Taylor, and this is the assault we are dealing with.

The Aurora Police and Postal Inspectors were called to the scene, and a ticket was issued to Erwin. However, instead of going on with a run-of-the-mill municipal court case, this fracas has been magnified beyond belief with the assumption of the role of defense counsel by an assistant United States Attorney who removed the case to the federal court. The case started with the testimony of Beth Simmons and a cross-examination of her as to whether the lease on the trailer space required that Heineken

be kept on a leash. What this had to do with the assault charge was beyond the ken of the Aurora Assistant City Attorney. The defendant said that the lease provisions were relevant to show "why he (Erwin) did those things." The record is barren of any suggestion that Erwin knew anything about the lease to Simmons-Taylor, but, nevertheless, the lease provisions and possible parol changes in it were inquired into endlessly. The Magistrate tried to convince defense counsel that the prosecution was for assault on a human being and not for animal abuse, although the record does show that when defendant sprayed Taylor, Heineken was "rolling around in the dirt by the side of the trailer." The subject was explored a little more, and the record shows:

"Q. At any time, from the point at which the defendant started spraying the dog and chased him, did the dog ever turn back towards him?

"A. No.

"Q. And at the point that the defendant sprayed Kent, what was the dog doing?

"A. He was just lying in the dirt."

Kent Taylor described the incident:

"A. The mailman—took a couple or three steps back and started spraying the dog, so the dog ran away, either because I called him or because he was being sprayed or a combination of both.

"Q. Okay; And where did the dog run to?

"A. He ran to the bottom of the steps.

"Q. Okay. Where did the mailman go?

"A. He came in, chasing the dog as fast as he could run stooping over and spraying, and—

"Q. Was he still spraying the dog?

"A. Yes, he was spraying the dog, continuing to.

. . . . .

"Q. Okay. And what happened? Did the defendant just stop spraying the dog?

"A. No. He turned and sprayed me . . .

"Q. Okay. What, if anything, did you say to him when he was spraying the dog?

"A. I was screaming something . . . all I can remember saying, 'He's just a puppy.' . . .

"Q. Okay. And where were you sprayed?

"A. On the left side of my face, left chest area. My arm was completely red."

These are the highlights of the prosecution's case, and the defense then started with the testimony of another mailman. He testified that this particular route is the doggiest route in Aurora, and that he had been bitten on other occasions, but I am not sure whether the bites took place on this route. Bringing back memories of Mary Coyle Chase, Elmer P. Dowd and Harvey, [it will be recalled that Mary lived nearby when she wrote the play] this witness explained:

"Q. And the other dogs. Just a brief description.

"A. One was a Doberman-Pinscher, about six foot high—big teeth."

Next, the assistant United States Attorney called a witness to establish Heineken's vicious propensities. She testified:

"Q. Had you seen this dog before?

"A. Oh, yes.

"Q. Had you played with the dog before?

"A. Played with him all the time.

"Q. Okay. Do you have any children or grandchildren?

"A. I had my grandson there all summer, and he played with the dog everyday. Everyday they went and played with the dog.

"Q. Okay. Have you ever had any problems with the dog?

"A. None whatsoever. He comes to my house but never did anything."

Another witness had this to say about Heineken:

"Q. And is the dog friendly?

"A. Yes, he is."

It was on cross-examination of the witness who thought that the puppy was friendly that this thought provoking question was asked by defense counsel:

"Q. You said that you never saw Heineken run at anyone. Did you ever have a conversation between your police department and Heineken?

"A. No. . . ."

I could go on and on, but I see no point in extending this opinion. The Magistrate made extensive and able findings in ruling that the defendant is guilty. Those findings were amply supported in the record. It is from these findings that the United States Attorney's office appeals, and I shall discuss the claimed errors in the reverse order to the listing adopted by the Assistant United States Attorney.

1. *There was insufficient evidence to support the judgment of conviction.*

■ Of course, the test here is whether there was any evidence to support the conviction. Not only was there evidence to support it, but the evidence of guilt was overwhelming. I think that I have quoted enough testimony to show that any claim of insufficiency of the evidence can't be argued logically, and I am sure that the record explains why defense counsel filed no post trial brief and why he said he didn't want any oral argument in this court.

2. *The magistrate committed error in admitting improper rebuttal testimony.*

■ The admission of rebuttal testimony is largely discretionary. I find no error in the admission of any rebuttal testimony, and, again, neither brief nor oral argument was presented explaining what defense counsel is complaining about.

3. *The magistrate committed error in allowing the victim, Keith Taylor, to remain in the courtroom after the magistrate ordered all witnesses sequestered.*

■ The United States Attorney seeks a ruling which would open a Pandora's Box

were it to be granted. The magistrate ruled that Mr. Taylor could be the prosecution's advisory witness. Counsel's argument at time of trial flies in the teeth of Rule 615 of the Federal Rules of Evidence. That which the prosecution was permitted to do is exactly what the United States Attorney asks to do in almost every criminal case. The prosecution can—and it does—select an advisory witness. The magistrate committed no error in this discretionary ruling.

4. *The magistrate committed error in denying the defendant's motion to dismiss for selective prosecution.*

Again, we have no post trial brief and no post trial argument. However, I glean from the transcript that this prosecution is supposed to be "selective" because the Aurora Police Department doesn't like a relative of defendant's. The argument advanced has absolutely no merit, and it borders on the frivolous.

5. *The magistrate committed error in denying the defendant's motion to dismiss for a defective summons.*

█ The case started with a summons, which is a step below an information. The United States Attorney's office not infrequently asks to amend informations to correct technical defects, and that's what happened here. All that could have been accomplished by dismissing the case would be to add to the paperwork. The case would have been refiled; and the full course of delaying tactics would have to be repeated. The summons could be amended, and it was. Defendant wasn't hurt in any way by permitting this technical amendment, which, by the way, was something ruled on by the municipal judge. As was pointed out in that court, the summons was amended in accordance with the Aurora Municipal Code. I wouldn't second guess the municipal judge on questions of Aurora procedure even if I thought the judge was wrong, but I think that the judge was right.

6. *The magistrate committed error in denying the defendant's motion for a jury trial.*

█ For the office of the United States Attorney for the District of Colorado to insist that a violation of a municipal ordinance must be tried to a jury is for that office to take a position diametric to its earlier arguments in countless petty offense cases initiated by it. I realize that the argument is that the right exists in a removed case because the City of Aurora [acting pursuant to Colorado statute and municipal ordinance] gives the right in the city court. I know that federal employees are anointed with their right of removal, but I don't think that they are doubly blessed with a right to take the case away from the state court loaded with privileges which don't exist in the federal court. Counsel says that the right to a jury trial in a petty offense case in the Aurora Municipal Court is a "substantive right." Although that is the view of the Assistant United States Attorney defending the case, his thinking was rejected by the Supreme Court of Colorado and the United States Supreme Court. See, *Austin v. City and County of Denver*, 170 Colo. 448, 462 P.2d 600, and *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491. In *Austin v. Denver*, the Colorado Supreme Court said:

"We hold, in the absence of legislative mandate by statute or charter to the contrary, petty offenses under the constitution, general laws, charters and ordinances, are those crimes or offenses the punishment for which do not exceed in extent imprisonment for more than six months or a fine of more than $500, or a combination of imprisonment and fine within such limits. (cit. om.) Having held that the ordinance under consideration charged petitioner with only a petty offense, denial of a jury trial to her was not error."

This is the same definition of a petty offense adopted by Congress [18 U.S.C. § 1]. There is no substantive right to a jury trial of a petty offense, and any right to a jury trial in the municipal court results

from statute or ordinance. It is a procedural right as applied to petty offenses, and neither the Colorado General Assembly nor the Aurora City Counsel can legislate procedures for the federal court. Just ordinary unanointed citizens can't have petty offenses tried to a jury in the federal court, and neither can federal employees. Substantive law of the original forum applies, but procedures are determined under federal rules. For example, whether in personam jurisdiction over a defendant was acquired is determined under state law, but time to plead and discovery procedures are governed by federal rules. See, Wright and Miller, Federal Practice and Procedure, § 3738. In *Granny Goose Foods v. Brotherhood of Teamsters etc.* (1974) 415 U.S. 423, 94 S.Ct. 1113, 39 L.Ed.2d 435, a criminal contempt case, the Court said:

> "More importantly, once a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to removal.
>
> > [Justice Marshall discusses the history of the rule, and he quotes from *Ex Parte Fisk* (1885) 113 U.S. 713, 5 S.Ct. 724, 28 L.Ed. 1117.]
>
> " ' . . . The petitioner having removed his case into the Circuit Court has a right to have its further progress governed by the law of the latter court, and not by that of the court from which it was removed . . . . ' "

When a federal employee who is a defendant in a criminal case removes the case, he obtains whatever he thinks are benefits stemming from the removal, but he accepts everything he thinks are burdens imposed by federal law. Defense counsel doesn't cite any of the cases mentioned above, and he surely doesn't mention *Arizona v. Manypenny*, (1981) 451 U.S. 232, 101 S.Ct. 1657, 68 L.Ed.2d 58.

> "But a state criminal proceeding against a federal officer that is removed to federal court does not 'arise under federal law' in this preempting sense. *Rather, a federal court conducts the trial under federal rules of procedure* while applying the criminal law of the state."

That's what the magistrate did here. He applied Colorado and Aurora law in deciding whether defendant was guilty of an assault as that offense is defined by state law, but he conducted the trial under federal rules of procedure.

I affirm the magistrate in all respects, not because I think that there was no "clear error", but because I think that there was no error. I think that under the record made, to have found the defendant "not guilty" would have been to ignore the clear evidence, and I agree with the magistrate's conclusion expressed in his evaluation of defendant's testimony, "The end result is, that what you have told this Court simply is not believable."