CITY OF AURORA, By and on Behalf
of the PEOPLE OF the STATE OF
COLORADO, Plaintiff-Appellee,

v.

Samuel Mansford ERWIN,
Defendant-Appellant.

No. 82–1317.

United States Court of Appeals,
Tenth Circuit.

April 29, 1983.

Seth, Chief Judge, filed dissenting opinion.

James D. Evans, Aurora, Colo., for defendant-appellant.

Patrick E. Koealeski, City Atty., and Debra B. Demirali, Asst. City Atty., Aurora, Colo., for plaintiff-appellee.

Before SETH, Chief Judge, and McKAY and SEYMOUR, Circuit Judges.

McKAY, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

Samuel Erwin is employed as a United States postman in Aurora, Colorado. He was charged with a petty offense under a municipal ordinance following an altercation that occurred in the course of his employment.[1] He removed the criminal proceeding from the city's municipal court to federal district court pursuant to the provisions of 28 U.S.C. § 1442(a)(1) (1976).[2] The

1. The record indicates that the incident occurred essentially as follows: While delivering mail in a mobile home court described as "the doggiest route in Aurora," Record, vol. 1, at 68, Postman Erwin encountered Heineken, a 7-month old mongrel puppy. Heineken barked at the postman, who retaliated by spraying Heineken with a dog repellent. Heineken retreated, and Postman Erwin followed in hot pursuit, continuing to spray the puppy with the irritant. Heineken's owner attempted to intervene, and the postman sprayed the owner with the dog repellent as well. The owner called the police and filed a complaint of assault, a petty offense under municipal law.

2. Section 1442(a)(1) provides as follows:

district court, 533 F.Supp. 457, referred the case to the federal magistrate[3] who tried it and found the defendant guilty. Mr. Erwin appealed the case to the district court,[4] which rejected the six issues he raised as meritless.[5] He brings the same issues here.

We agree with the district court that the first five claims are without legal merit. However, the sixth claim raises an important issue under the federal removal provisions of 28 U.S.C. § 1442(a)(1). In this claim, Mr. Erwin asserts that the magistrate erred in denying his timely demand for a jury trial. He argues that Colorado law provides him with an absolute right to a jury trial that he retains upon removal of his criminal proceeding to federal court. In resolving this claim, we examine the scope of the federal court's jurisdiction under section 1442(a)(1) and the nature of the right to a jury trial provided by Colorado law.

### I

Section 1442(a)(1) grants a right of removal to federal officers who face litigation in state court as a result of actions taken in the course of their official duties. 28 U.S.C. § 1442(a)(1). Of particular interest in this case, it provides a federal forum to United States officers whose conduct under color of federal law results in criminal prosecution under state law. *Id.* The Supreme Court has long recognized removal to federal courts in these circumstances as a matter of considerable importance to the United States. *See Arizona v. Manypenny,* 451 U.S. 232, 101 S.Ct. 1657, 68 L.Ed.2d 58 (1981); *Willingham v. Morgan,* 395 U.S.

402, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969); *Tennessee v. Davis,* 100 U.S. 257, 25 L.Ed. 648 (1880). Consequently, the Court has held that the right to removal for conduct performed under color of federal office is absolute, and has insisted that the policy favoring removal " 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).' " *Manypenny,* 451 U.S. at 242, 101 S.Ct. at 1664 (quoting *Willingham,* 395 U.S. at 407, 89 S.Ct. at 1816).

■ Although the right to removal is absolute, the consequences of removal are circumscribed by the scope of the jurisdiction granted the federal courts by section 1442(a)(1). In *Arizona v. Manypenny,* the Supreme Court explained the limited scope of the federal court's authority in these removal cases, stating that section 1442(a)(1) is intended to provide a forum free from local interests and prejudice in which the federal officer can assert immunity defenses based on official conduct. *Id.* 451 U.S. at 241–42, 101 S.Ct. at 1663–1664. In light of this limited purpose, the removal of a state criminal proceeding under section 1442(a)(1) does not result in a general preemption of state law; instead, "the federal court conducts the trial under federal rules of procedure while applying the criminal law of the state." *Id.* at 241, 101 S.Ct. at 1664. The Court further explained that

the invocation of removal jurisdiction by a federal officer does not revise or alter the underlying law to be applied. In this respect, it is a purely derivative form of jurisdiction, *neither enlarging nor con-*

---

(a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1) (1976).

**3.** *See* 18 U.S.C. § 3401 (1976 & Supp. V 1981).

**4.** *See* 18 U.S.C. § 3402 (1976).

**5.** The six grounds were stated essentially as follows: 1) there was insufficient evidence to support the conviction; 2) the magistrate erred in admitting improper rebuttal testimony; 3) the magistrate erred in allowing the victim, Keith Taylor, to remain in the courtroom after ordering all witnesses sequestered; 4) the magistrate erred in denying the defendant's motion to dismiss for selective prosecution; 5) the magistrate erred in denying the defendant's motion to dismiss for defective summons; and 6) the magistrate erred in denying the defendant's motion for a jury trial.

*tracting the rights of the parties.* Federal involvement is necessary in order to insure a federal forum, but it is limited to assuring that an impartial setting is provided in which the federal defense of immunity can be considered during prosecution under state law.

*Id.* at 242, 101 S.Ct. at 1664 (emphasis added, footnote omitted). Thus, a federal court exercising jurisdiction under section 1442(a)(1) serves as an alternative forum in a manner roughly analogous to its role in diversity cases, applying state law through the mechanism of its own procedural rules.[6]

As experience in diversity cases has shown, this bifurcation of state and federal authority does not resolve all conflicts between state and federal law. *See Walker v. Armco Steel Corp.,* 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980); *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). *See generally,* Ely, *The Irrepressible Myth of Erie,* 87 Harv.L.Rev. 693 (1974). In particular, while it is clear that federal procedural law supplants conflicting state procedural law, a problem remains in distinguishing between state law that is procedural and state law that is nonprocedural in nature. Mr. Erwin's claim that he is entitled to a jury trial presents this problem in the context of removal under section 1442(a)(1). Although the determination of whether the state-created right is procedural or nonprocedural constitutes a federal question, the determination is informed by the state's purpose in granting the particular right. We therefore look to whether Colorado grants the right to a jury trial in petty offense prosecutions for procedural or nonprocedural reasons.[7]

---

**6.** Of course, the analogy is not exact. Section 1442(a)(1) cases typically require consideration of official immunity issues and therefore, unlike diversity actions, generally raise questions of federal law. Furthermore, section 1442(a)(1) cases differ from diversity actions in terms of the authority that governs the choice between federal and state law. This choice is controlled in section 1442(a)(1) criminal prosecutions by the Supreme Court's interpretation of the power granted it by the removal statute. *See Manypenny,* 451 U.S. at 241–43, 101 S.Ct. at 1663–1664. By comparison, the choice in diversity cases is governed, in the first instance, by the Rules of Decision Act, 28 U.S.C. § 1652 (1976) and the Rules Enabling Act, 28 U.S.C. § 2072 (1976), and at the outer perimeter by the Constitution, *see Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). *See generally* Ely, *The Irrepressible Myth of Erie,* 87 Harv.L.Rev. 693 (1974).

The Rules of Decision Act specifically requires that the laws of the several states shall generally control civil actions brought under diversity jurisdiction in federal court, *see* 28 U.S.C. § 1652, while the Rules Enabling Act provides that the federal courts shall utilize their own rules of civil procedure except where application would result in modifying a "substantive right" created under state law, *see* 28 U.S.C. § 2072. Thus, in addition to the different statutory sources of authority in removal and diversity actions, the specification in the Rules Enabling Act that federal courts cannot modify "substantive rights" may result in yet a further distinction between section 1442(a) cases and diversity actions. In discussing the scope of federal authority under section 1442(a)(1) in *Manypenny,* the Supreme Court did not specify that rights held under state law

must necessarily be "substantive" in order to be immune from abridgment by federal law. *See infra* notes 7 & 11.

**7.** In the following analysis we distinguish between procedural and nonprocedural purposes in state law. In making this distinction we note that the vocabulary surrounding the purposes attributed to state law is fraught with confusion. Typically, courts distinguish between procedural and substantive law, a method employed in cases arising under diversity jurisdiction. *See Hanna v. Plumer,* 380 U.S. 460, 471–72, 85 S.Ct. 1136, 1143–1144, 14 L.Ed.2d 8 (1965). As Professor Ely has stated, a procedural law is generally understood to be "one designed to make the process of litigation a fair and efficient mechanism for the resolution of disputes." Ely, *supra* note 6, at 724 (footnotes omitted). The definition of a "substantive law" has proved to be more difficult. *See Ely, supra* at 725–26; Welborn, *The Federal Rules of Evidence and the Application of State Law in the Federal Courts,* 55 Tex.L.Rev. 371, 403–04 (1977); P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, Hart & Wechsler's The Federal Courts and the Federal System 747 (2d ed. 1973). *See also Hanna v. Plumer,* 380 U.S. at 475, 85 S.Ct. at 1146 (Harlan, J., concurring). In *Manypenny,* the Supreme Court makes no references to procedural and substantive law. Instead, the Court notes that the federal courts in removal cases apply federal rules of procedure, but can neither enlarge nor contract the "rights of the parties." 451 U.S. at 241, 242, 101 S.Ct. at 1663–1664. In the absence of more concrete guidance, we conclude that the Court here refers to all rights that are embodied in state law for reasons other than procedural

## II

We recognize at the outset that a state might provide a right to a jury trial in petty offense cases for either procedural or nonprocedural reasons, or indeed to serve both purposes. On the one hand, a state might provide jury trials strictly to promote procedural fairness and efficiency, concluding that juries enhance the reliability of the fact-finding process and protect the defendant from a biased or capricious judge. *See Duncan v. Louisiana,* 391 U.S. 145, 155–57, 88 S.Ct. 1444, 1450–1451, 20 L.Ed.2d 491 (1968) (alluding to these functions). On the other hand, a state may provide a right to a jury trial to further nonprocedural goals of special significance in criminal trials. For instance, a state may guarantee a right to jury trial in order to provide the defendant an opportunity for jury nullification, *see United States v. Dougherty,* 473 F.2d 1113, 1130–36 (D.C.Cir.1972) (recognizing the power of the jury to nullify rules of law), or to provide the defendant with the sense of moral vindication that results from presenting his case to a jury of his peers, *see* Ely, *supra,* at 725–26 (noting that nonprocedural purposes include "the fostering and protection of certain states of mind"). Thus, there exist both procedural and nonprocedural interests that a state might plausibly wish to advance in providing a right to a jury trial.

Colorado's statutory provision of the right to a jury trial in petty offense cases represents a legislative reaction to the Colorado Supreme Court's interpretation of the state constitution. The Colorado Constitution provides that the accused shall have the right to a trial by an impartial jury in criminal prosecutions. Colo.Const. art. II, §§ 16 & 23. In 1969 the Colorado Supreme Court concluded that the state constitutional guarantee did not extend to criminal prosecutions of petty offenses. *Austin v. City of Denver,* 170 Colo. 448, 462 P.2d 600, *cert. denied,* 398 U.S. 910, 90 S.Ct. 1703, 26 L.Ed.2d 69 (1970). Within months, the Colorado General Assembly reacted to the *Austin* decision by enacting a statute specifically providing that "[a] defendant charged with a petty offense shall be entitled to a jury trial." Colo.Rev.Stat. § 16–10–109(2) (1978). In enacting the statute, the assembly explicitly denied municipal courts the power to abridge this right through local court rules, stating as follows:

> The general assembly finds that the right to a trial by jury for petty offenses is of vital concern to all of the people of the state of Colorado and that the interests of the state as a whole are so great that the general assembly shall retain sole legislative jurisdiction over the matter, which is hereby declared to be of statewide concern.

Colo.Rev.Stat. § 13–10–101 (1973). *See also* Colo.Mun.Ct.R.P. 223 ("[t]rial shall be to the court, unless the defendant is entitled to a jury trial under constitution, ordinance, charter, or general laws of the state").

In interpreting Colorado's statutory right to a jury trial for petty offenses, the Colorado Supreme Court has consistently stated that the provision embodies a "substantive right." *Garcia v. People,* 200 Colo. 413, 615 P.2d 698, 699–700 (1980); *Hardamon v. Municipal Court,* 178 Colo. 271, 497 P.2d 1000, 1002–03 (1972). By describing the right as "substantive," the court apparently contemplates that the right has nonprocedural attributes.[8] Consistent with this inference, the court has held that this statutory right cannot be abridged on account of the forum in which the petty offense is tried. In *Hardamon,* the court rejected contentions that because the Colorado Constitution gave home rule cities the power to create and regulate their own courts, they could ignore the statutory requirement, stating that since

> the right to a jury in petty offense cases is a substantive right granted to all of the

---

purposes. Indeed, Professor Ely suggests that the best definition of a substantive right is a right granted for a nonprocedural reason, "for some purpose or purposes not having to do with the fairness or efficiency of the litigation process." Ely, *supra,* note 6 at 725.

**8.** *See supra* note 7.

citizens of the state, without regard to the place where the offense may have occurred or the court in which trial may be held, we find no merit to appellees' argument that home rule cities have the power to deny such a right by reason of the authority constitutionally vested in home rule cities .... This constitutional authority, broad as it is concerning the creation, organization and administration of municipal courts, is limited in scope to those aspects of court organization and operation which are local and municipal in nature and does not empower home rule cities to deny substantive rights conferred upon all of the citizens of the state by the general assembly.

497 P.2d at 1002. The court later reiterated that "the vitality of a substantive right, such as the right to a jury trial, conferred upon all of the citizens of the state by the legislature, should not depend upon the court in which the citizen attempts to exercise it." 497 P.2d at 1002–03.

Clearly, the Colorado Supreme Court interprets the statutory provision granting jury trials in petty offense cases as providing a nonprocedural right that cannot be abridged on account of the forum in which the petty offense is tried. In interpreting the Colorado General Assembly's intent, the Colorado Supreme Court has not explained the nonprocedural interests that the right serves. However, as we have previously noted, the right to a jury trial can plausibly advance a variety of nonprocedural purposes. Given the existence of these potential nonprocedural purposes, we have no basis for questioning the Colorado Supreme Court's conclusion. Consequently, we accept the state court's determination and we hold that Colorado's right to jury trial in a

petty offense prosecution, at least in part, is nonprocedural in nature.

### III

Having examined both the scope of federal authority in actions removed to federal court under section 1442(a)(1) and the nature of the right to a jury trial under Colorado law, we now turn to the resolution of Mr. Erwin's claim that he is entitled to a jury trial.

In removing his prosecution from the City of Aurora municipal court to federal court under section 1442(a)(1), Mr. Erwin must submit to the federal rules of criminal procedure. *See* Fed.R.Crim.P. 54(b)(1). However, as *Manypenny* unequivocally instructs, the federal court can neither enlarge nor contract rights provided to him under Colorado law. *See* 451 U.S. at 242, 101 S.Ct. at 1664. Colorado statutory law guarantees Mr. Erwin the right to a trial by jury for the offense charged. In light of the Colorado Supreme Court's interpretation, we have concluded that this right is, at least in part, nonprocedural in nature. *See Hardamon*, 497 P.2d at 1002–03. We can perceive no principled basis for displacing this right on the ground that the criminal proceeding was removed from a municipal court, or that the crime charged is a petty offense, or that the right to a jury trial may serve procedural as well as nonprocedural purposes.[9] Under *Manypenny*, the federal courts are obligated to observe rights provided to parties under state law. Accordingly, we conclude that Mr. Erwin is entitled to a jury trial in federal court conducted under the federal rules governing criminal procedure and trial by magistrate.[10]

---

**9.** Indeed, the facts in *Manypenny* suggest that perhaps even state procedural rights must be honored in federal court unless they conflict with a federal rule. In *Manypenny,* the state claimed that it had a right to appeal a judgment of acquittal entered by a judge in a prosecution removed to federal court. The state relied on authority provided by a state statute to appeal acquittals obtained in state prosecutions by state courts. The Supreme Court held that the statute conferred authority on the state to appeal in prosecutions removed to federal court.

451 U.S. at 250, 101 S.Ct. at 1668. This right to appeal seems primarily procedural, assuring the accuracy of lower court findings. However, the Supreme Court did not discuss the relevance of this characterization.

**10.** Our holding does not conflict with any federal rule. Rule 23(a) provides that "[c]ases required to be tried by jury shall be so tried ...." Fed.R.Crim.P. 23(a). We simply hold that this case must be tried to a jury.

We vacate the conviction and remand the case for a new trial.

SETH, Chief Judge, dissenting:

I must respectfully dissent from the position expressed in the majority opinion because I cannot agree that the defendant, who removed a state petty offense charge from Colorado, is entitled to a jury trial on such offense before a federal magistrate.

There is no constitutional right to a jury trial before a federal magistrate on a petty offense, *Frank v. United States,* 395 U.S. 147, 89 S.Ct. 1503, 23 L.Ed.2d 162, and Fed. R.Mag.P. 2(b)(6) provides that there are no such jury trials for petty offenses. Thus reliance must be placed entirely on state law to create such a right in the federal court where the rule is to the contrary.

The Colorado statute should not and really cannot introduce into the federal courts such a trial because state laws cannot alter the essential character or functions of a federal court. *Herron v. Southern Pacific Co.,* 283 U.S. 91, 51 S.Ct. 383, 75 L.Ed. 857. The distribution of trial functions between judge and jury is an "essential characteristic" of the federal judicial system. *Byrd v. Blue Ridge Cooperative,* 356 U.S. 525, 537, 78 S.Ct. 893, 900, 2 L.Ed.2d 953. Colorado law in this instance cannot control the distribution of such a basic trial function, and in any event, it cannot do so in the absence of assertions of unfair discrimination or an encouragement of forum shopping. Thus

the statement of policy by Colorado cannot in itself be a determination for this court as to whether or not a petty offense and perhaps a three-person jury should become part of the federal magistrate system. The implications of such a doctrine are apparent.

The role of state policy in the *federal* decision as to substantive or procedural has been severely circumscribed by the Supreme Court. State assertions that certain rights are "substantive" or "important" are not to be accepted as the answer by federal courts. The Supreme Court has stated that the importance of a state rule is *only* relevant in the context of asking whether the failure to apply the state rule would unfairly discriminate against citizens of the forum state or whether application of the state rule would encourage forum shopping. *Hanna v. Plumer,* 380 U.S. 460, 468, n. 9, 85 S.Ct. 1136, 1142, n. 9, 14 L.Ed.2d 8.

The state provision for a three-person jury has nothing to do with the elements, nature or description of the offense charged. If the structure of the jury has to be changed in the federal magistrate court from that existing in the state court, it would appear that this would demonstrate that the "right" is not what it is characterized to be—that is a substantive right to a three-person jury.

The reason for the enactment of the Colorado statute is most persuasive as it demon-

---

We also note that the issue we decide in this case bears some similarity to the issue of whether state or federal law controls the right to a jury trial in diversity actions. When presented with that issue, the Supreme Court held that the right to a jury trial is determined as a matter of federal law. *See Simler v. Conner,* 372 U.S. 221, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963) (per curiam); *Byrd v. Blue Ridge Rural Elec. Coop., Inc.,* 356 U.S. 525, 537–38, 78 S.Ct. 893, 900–901, 2 L.Ed.2d 953 (1958); *Herron v. Southern Pacific Co.,* 283 U.S. 91, 51 S.Ct. 383, 75 L.Ed. 857 (1931). However, for a number of reasons these cases seem to be inapposite. First, the authority that governs the choice between federal and state law in section 1442(a)(1) differs from diversity actions. *See supra* note 6. Thus, conclusions drawn from diversity cases are not necessarily applicable. Second, the right to a jury trial in this case

involves a Sixth Amendment right, rather than a Seventh Amendment right, and consequently invokes substantially different interests, such as a defendant's potential right to jury nullification under state law. Third, in both *Simler* and *Byrd,* the Supreme Court provided a right to a jury trial in federal court, relying on the "federal policy favoring jury trials." *Simler,* 372 U.S. at 222, 83 S.Ct. at 610; *see Byrd,* 356 U.S. at 538, 78 S.Ct. at 901. By comparison, in the case at hand the appellant *seeks* the right to a jury trial in federal court. Fourth, the reasoning of these diversity cases has been the subject of controversy and criticism. *See, e.g.,* Ely, *supra* note 6, at 709. For these reasons, we hew close to the reasoning of the Supreme Court's recent opinion in *Arizona v. Manypenny* in determining that the appellant is entitled to a jury trial.

strates that "substantive" was there used in a different sense and one we should not consider here. Instead, it was used to meet a purely local political problem in state government or a need perceived by the state legislature arising in certain Colorado communities. It appears to have been enacted solely, and the term "substantive" used, to counter the authority exercised by some Colorado home rule cities. No reason has been advanced why there should be introduced such a device *characterized* as substantive for such a particular and local purpose into the federal magistrate system where the policy and practice is to the contrary.

The three-person jury cannot be made a substantive right for the purposes here considered because the Colorado legislature so describes it.