872 F.2d 571
 57 USLW 2642
 William KOLIBASH, Member of the West Virginia State Bar,
(Case No. 1337 before the Committee on Legal
Ethics of the West Virginia State Bar), Appellant,
v.
COMMITTEE ON LEGAL ETHICS OF the WEST VIRGINIA BAR, Appellee.
 No. 88-3871.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 9, 1988.
Decided March 7, 1989.
Rehearing and Rehearing In Banc Denied May 10, 1989.
 
 David Alan Faber, Sp. Asst. U.S. Atty. (Spilman, Thomas, Battle & Klostermeyer, Charleston, W.Va., on brief) for appellant.
 David Paul Cleek, Sp. Counsel (Jack M. Marden, Bar Counsel, West Virginia State Bar, Charleston, W.Va., on brief) for appellee.
 Before WILKINSON, Circuit Judge, and HOWARD, United States District Judge for the Eastern District of North Carolina, sitting by designation, and MERHIGE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 CORRECTED OPINION
 WILKINSON, Circuit Judge:
 
 
 1
 This case concerns the question of whether a West Virginia State Bar Association disciplinary proceeding brought against the United States Attorney for the Northern District of West Virginia may be removed to federal district court pursuant to the federal officer removal statute, 28 U.S.C. Sec. 1442. We hold that removal of this action satisfied the statutory requirements of Sec. 1442 and that the district court erred by divesting itself of jurisdiction over this matter.
 
 I.
 
 2
 The case began when John B. Cain complained to the West Virginia State Bar Association that David A. Jividen had engaged in professional misconduct while serving as an Assistant United States Attorney for the Northern District of West Virginia. Cain alleged that Jividen had represented Cain during a federal grand jury investigation, and then, after becoming an Assistant United States Attorney, had participated on the government's side of the case by questioning grand jury witnesses. Cain was tried and convicted on federal drug charges; he raised Jividen's alleged conflict of interest in a pretrial motion to dismiss the indictment against him. This court reversed Cain's conviction and dismissed the indictment, holding that Jividen's participation had violated Cain's due process rights. United States v. Schell, 775 F.2d 559, 565-66 (4th Cir.1985).
 
 
 3
 The West Virginia State Bar Association then began to investigate Jividen's conduct and expanded the scope of its inquiry to include his supervisor--William A. Kolibash, United States Attorney for the Northern District of West Virginia. On April 30, 1987, the State Bar Committee on Legal Ethics formally accused Kolibash of failing to adequately supervise Jividen, and of failing to disclose pertinent information during the trial court's investigation of Cain's conflict of interest charges against Jividen. Kolibash maintains that he has done nothing wrong, and that he instructed Jividen to isolate himself from cases involving individuals that Jividen previously had represented. The State Bar also accused Jividen of professional misconduct.
 
 
 4
 On May 6, 1987, Kolibash and Jividen petitioned to remove the state disciplinary proceeding to the United States District Court for the Southern District of West Virginia pursuant to 28 U.S.C. Sec. 1442. On May 22, 1987, the Committee on Legal Ethics filed a motion to remand the action to the state system pursuant to 28 U.S.C. Sec. 1447. Jividen subsequently withdrew his petition for removal, and on April 21, 1988, the district court remanded the proceedings, declaring that "licensure of professionals is basically a state function." The district court stated that members of the State Bar "who serve as federal officials are no less subject to the requirements of the Code of Professional Responsibility that is the cornerstone of licensure to practice the profession" in West Virginia. The district court then declared that Kolibash would be accorded a fair and just adjudication in the state system.
 
 
 5
 The State Bar's charges against Jividen are not relevant to this appeal. Kolibash, however, seeks reversal of the district court's remand order. In the alternative, Kolibash petitions this court to grant a writ of mandamus directing the district court to retain jurisdiction over this action.
 
 II.
 
 6
 Generally, a district court order remanding a case to the state court from which it was removed is "not reviewable on appeal or otherwise." 28 U.S.C. Sec. 1447(d). The State Bar contends that 28 U.S.C. Sec. 1447(d) bars review of the district court's remand order and that Kolibash's appeal therefore should be dismissed. We disagree.
 
 
 7
 Section 1447(d) does not bar review in all cases. See Thermtron Products, Inc. v. Hermansdorfer, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976). Sections 1447(c) and 1447(d) are in pari materia and are to be construed accordingly. A remand order is therefore immune from review only if it invokes the grounds specified in Sec. 1447(c)--i.e., "that removal was improvident and without jurisdiction." Id. at 345-46, 96 S.Ct. at 590-91. See also Three J Farms, Inc. v. Alton Box Board Co., 609 F.2d 112, 115-16 (4th Cir.1979).
 
 
 8
 Although a district court is not required to invoke the specific language of Sec. 1447(c), see Gravitt v. Southwestern Bell Telephone Co., 430 U.S. 723, 97 S.Ct. 1439, 52 L.Ed.2d 1 (1977), the court's failure in this case to pose the propriety of remand in the terms of the statute is a factor in determining whether its order is reviewable. See Karl Koch Erecting Co. v. New York Convention Center Dev. Corp., 838 F.2d 656, 658 (2d Cir.1988). Here, the district court did not apply the Sec. 1447 standard. It focused instead on the state interest in regulating and policing professional misconduct. This consideration, however, is not dispositive in determining whether the state disciplinary proceeding was improvidently removed under the federal officer removal statute. The remand order represented a discretionary decision by the district court not to hear a certain case on grounds of public policy and is therefore reviewable on appeal. As the Supreme Court recognized in Thermtron, Congress did not intend "to extend carte blanche authority to the district courts to revise the federal statutes governing removal by remanding cases on grounds that seem justifiable to them but which are not recognized by the controlling statute." 423 U.S. at 351, 96 S.Ct. at 593.
 
 III.
 
 9
 The State Bar next contends that removal of the state disciplinary proceeding was improvidently made and that the district court therefore properly divested itself of jurisdiction. We disagree. In cases such as the present appeal, which satisfy the statutory requirements, a federal forum has been guaranteed to federal officers by the federal officer removal statute, 28 U.S.C. Sec. 1442.
 
 
 10
 The federal officer removal statute is the culmination of a long history of removal provisions designed to protect federal officers in the performance of their federal duties.[1] See, Mesa v. California, --- U.S. ----, ----, 109 S.Ct. 959, 963, 103 L.Ed.2d 99 (1989); Willingham v. Morgan, 395 U.S. 402, 405-07, 89 S.Ct. 1813, 1815-16, 23 L.Ed.2d 396 (1969). Section 3 of the Force Act of 1833, Act of March 2, 1833, 4 Stat. 632, 633-34, for example, is the historical antecedent of Sec. 1442 and was the federal government's response to South Carolina's attempt to "nullify" the national revenue laws. Gay v. Ruff, 292 U.S. 25, 32, 54 S.Ct. 608, 611, 78 L.Ed. 1099 (1934). The Force Act was passed to prevent "paralysis" of federal operations by protecting federal revenue agents from state court prosecutions for violations of state law. See also Act of February 4, 1815, Sec. 8, 3 Stat. 195, 198. In 1875, the right of removal was extended to members of both houses of Congress. Act of March 3, 1875, Sec. 8, 18 Stat. 371, 401 (codified at 28 U.S.C. Sec. 1442(a)(4)). In 1916, it was extended to officers of the United States courts, Act of August 23, 1916, 39 Stat. 532 (codified at 28 U.S.C. Sec. 1442(a)(3)); and in the Judicial Code of 1948, the removal statute was extended to encompass all federal officers and their agents. See H.R.Rep. No. 308, 80th Cong., 1st Sess. (1947). See also Gay, 292 U.S. at 32-33 n. 8, 54 S.Ct. at 611-12 n. 8.
 
 
 11
 While the scope of the federal officer removal statute has broadened, its underlying rationale remains unchanged: "Congress has decided that federal officers, and indeed the Federal Government itself, require the protection of a federal forum." Willingham, 395 U.S. at 407, 89 S.Ct. at 1816. A federal officer's right of removal under Sec. 1442(a)(1) is therefore available whenever a suit in a state court is for any act "under color" of federal office--i.e., whenever a federal defense can be alleged by the federal officer seeking removal. Mesa, --- U.S. at ----, 109 S.Ct. at 962. The removal statute clearly " 'cover[s] all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law.... In fact, one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court.' " Id. at ----, 109 S.Ct. at 966, quoting Willingham, 395 U.S. at 406-07, 89 S.Ct. at 1815-16.
 
 
 12
 Although 28 U.S.C. Sec. 1442(a) generally requires the specific averment of a federal defense, Mesa, --- U.S. at ----, 109 S.Ct. at 969, the Supreme Court has explicitly left unresolved the question of whether "careful pleading, demonstrating the close connection between the state prosecution and the federal officer's performance of his duty, might adequately replace the specific averment of a federal defense." Id. at ----, 109 S.Ct. at 966. In such circumstances, pleading by traverse may warrant removal. We think that this is such a case.
 
 
 13
 In his removal petition, for example, Kolibash demonstrates that his alleged misconduct grew out of acts performed by him in the course of his duties as a federal officer. As the district court recognized, the State Bar's charges arose out of Kolibash's alleged negligent supervision of one of his subordinates, which occurred while Kolibash was acting in his capacity as the United States Attorney for the Northern District of West Virginia. In his answer to the State Bar's charges, Kolibash denied that any misconduct occurred. We believe that such pleading is akin to pleading a defense of immunity and that, in any event, the more liberal pleading requirements noted in Mesa are particularly well suited to the circumstances of this case.
 
 
 14
 Policies supporting the doctrine of official immunity are plainly implicated here. A prosecutor's common law immunity is based on the "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." Imbler v. Pachtman, 424 U.S. 409, 423, 96 S.Ct. 984, 991, 47 L.Ed.2d 128 (1976). In many cases, government officials are therefore entitled to some form of immunity in order "to shield them from undue interference with their duties and from potentially disabling threats of liability." Harlow v. Fitzgerald, 457 U.S. 800, 806, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1981). The doctrine of official immunity, whether qualified or absolute, is based on the sound consideration that "exposing government officials to the same legal hazards faced by other citizens may detract from the rule of law instead of contributing to it." Forrester v. White, 484 U.S. 219, 108 S.Ct. 538, 542, 98 L.Ed.2d 555 (1988). Although developed in the context of state and federal damages actions, this long line of cases illustrates the importance of the unstinting performance of public duties by public officials--much the same interests implicated in the federal officer removal statute.
 
 
 15
 Regulation of the legal profession admittedly implicates significant state interests, but the federal interest in protecting federal officials in the performance of their federal duties is paramount. Many federal officials may be subject to potentially abusive state process. See Mesa, --- U.S. at ----, 109 S.Ct. at 970 (Brennan, J., concurring) (state and local resistance to acts of Congress and decisions of the Supreme Court in the areas of school desegregation and voting rights is "not so distant that we should be oblivious to the possibility of harassment" of federal officers by state and local officials). Although we intimate no view as to the underlying merits of the present action, state professional disciplinary proceedings could be used to interfere with the duties of federal officials, including the President of the United States, the Secretary of State, and the Attorney General of the United States, all of whom may be lawyers. Federal prosecutors too may be targets of retaliatory state proceedings and the existence of the various forms of immunity available to federal officials raises at least a colorable issue as to whether they also are immune from state professional disciplinary actions. See e.g., Butz v. Economou, 438 U.S. 478, 508-11, 98 S.Ct. 2894, 2911-13, 57 L.Ed.2d 895 (1978) (absolute immunity for federal and state prosecutors acting in their prosecutorial capacity); Harlow, 457 U.S. at 818, 102 S.Ct. at 2738 (qualified immunity generally for government officials performing discretionary functions); Westfall v. Erwin, 484 U.S. 292, 108 S.Ct. 580, 585, 98 L.Ed.2d 619 (1988) (absolute immunity from state tort actions for conduct of federal officials which is within the scope of their official duties and which is discretionary in nature). See also General Elec. Co. v. United States, 843 F.2d 168, 169 (4th Cir.1988).
 
 
 16
 There is a world of difference between the duties of prosecutorial supervision involved here and the circumstances of Mesa where the federal postal employees seeking removal clearly "could not present an official immunity defense to the state criminal prosecutions brought against them." --- U.S. at ----, 109 S.Ct. at 967. Indeed, this case not only involves the extent of a United States Attorney's responsibility for the acts of his subordinates, but the scope of a federal prosecutor's duty to disclose the details of a federal grand jury investigation in a subsequent hearing on a charge of prosecutorial misconduct. See Kentucky v. Long, 837 F.2d 727, 741-49 (6th Cir.1988) (scope of authority of federal officers charged with misconduct may involve federal defenses under the Supremacy Clause).
 
 
 17
 It is not necessary for us to decide whether immunity attaches to this case and if it does to what degree. At the very least, a colorable claim of immunity exists, the validity of which should be judged by federal standards in a federal district court. See Willingham, 395 U.S. at 406-07, 89 S.Ct. at 1815-16. Contrary to the State Bar's assertion, discretionary abstention in the context of Sec. 1442(a)(1) removal is therefore not available.
 
 
 18
 Finally, although we do not rely upon the notion of "protective jurisdiction" to sustain removal in this case, we do note that many of the federal interests underlying that theory are particularly relevant to the instant appeal. See Schumacher v. Beeler, 293 U.S. 367, 374, 55 S.Ct. 230, 233, 79 L.Ed. 433 (1934). See also Note, The Theory of Protective Jurisdiction, 57 N.Y.U.L.Rev. 933 (1982). Kolibash's alleged misconduct, for example, arose out of a federal grand jury drug investigation and a subsequent criminal trial in federal district court. Significant federal interests are therefore involved regardless of whether Kolibash has a federal defense to the state professional disciplinary proceeding. Compare Mesa, --- U.S. at ----, 109 S.Ct. at 960 (no federal interest in allowing federal postal employees to remove to federal district court state criminal prosecutions brought against them for traffic violations, including misdemeanor-manslaughter, committed while on duty).
 
 
 19
 Mesa involved a criminal prosecution. This case involves a hybrid, quasi-civil proceeding. Civil proceedings, of course, are not subject to the checks which normally attend the criminal process and may be instituted at the behest of a single individual. Although the State Bar is the formal party at interest, the action here has its origin in a single complaint--that of John Cain. That complaint went to the heart of a critical federal function--a United States Attorney's supervision of his own staff.
 
 IV.
 
 20
 This court has held that the right of removal conferred by Sec. 1442(a)(1) is to be broadly construed. North Carolina v. Carr, 386 F.2d 129 (4th Cir.1967). See also Nationwide Investors v. Miller, 793 F.2d 1044, 1045 (9th Cir.1986); Overman v. United States, 563 F.2d 1287, 1290-91 (8th Cir.1977). In cases where a federal officer is subject to state process for acts performed "under color" of his federal office, the policy of protecting federal officers by guaranteeing them a federal forum should not be frustrated by a "narrow, grudging interpretation" of the statute. Willingham, 395 U.S. at 407, 89 S.Ct. at 1816.
 
 A.
 
 21
 By its terms, Sec. 1442 authorizes removal of state proceedings that are commenced against a federal officer, or his agent, for acts done "under color" of office. As discussed above, we believe that this case satisfies that statutory requirement. The State Bar contends, however, that, regardless of whether the "under color" of office test is met, the disciplinary proceeding is not a "civil action or criminal prosecution commenced in a State court," 28 U.S.C. Sec. 1442(a), and is therefore not removable under the federal officer removal statute. We reject such a narrow reading of the removal provision.
 
 
 22
 The central concern of the removal statute is that a federal officer or agent shall not be forced to answer for acts performed under color of his office in anything but a federal forum. Regardless of what label is attached to the proceeding, Sec. 1442(a)(1) should be construed in light of this purpose. North Carolina, 386 F.2d at 131; Wisconsin v. Schaffer, 565 F.2d 961, 963 (7th Cir.1977). The form that the state action takes is therefore not controlling; "it is the state's power to subject federal officers to the state's process that Sec. 1442(a)(1) curbs." Nationwide Investors, 793 F.2d at 1047.
 
 
 23
 The Committee on Legal Ethics is defined as an instrumentality of the West Virginia Supreme Court of Appeals and its procedures are adjudicatory in nature. The Committee is authorized to hold evidentiary hearings, subpoena witnesses, take testimony under oath in an adversary proceeding, and otherwise conduct itself as a court. It also makes factual findings and recommends attorney sanctions to the West Virginia Supreme Court of Appeals. A Committee investigation can result in public reprimands, suspensions, or disbarment of lawyers who practice in West Virginia. To hold this proceeding outside the operation of the removal statute would be to elevate form over substance. If a state investigative body operates in an adjudicatory manner, and if a federal officer or his agent is subject to its process, the statutory requirements of Sec. 1442(a)(1) are satisfied. See Volkswagen de Puerto Rico, Inc. v. Puerto Rico Labor Relations Bd., 454 F.2d 38, 43-45 (1st Cir.1972) (interpreting a similar provision in 28 U.S.C. Sec. 1441).
 
 B.
 
 24
 Finally, the State Bar asserts that removal, if proper, is available only to the district court for the Northern District of West Virginia. Again we disagree. Removal to the Southern District was appropriate in this case.
 
 
 25
 A federal court's role under Sec. 1442 is similar to that of a federal court sitting in diversity. See City of Aurora v. Erwin, 706 F.2d 295, 296-97 (10th Cir.1983). The federal officer removal statute permits a state action to be adjudicated on the merits in a federal court "free from local interests or prejudice," Arizona v. Manypenny, 451 U.S. 232, 241-42, 101 S.Ct. 1657, 1664-65, 68 L.Ed.2d 58 (1981), and a federal officer is therefore guaranteed a federal forum in which federal rules of procedure will be applied.
 
 
 26
 In the instant case, the West Virginia State Bar is an administrative arm of the West Virginia Supreme Court of Appeals, which sits within the Southern District of West Virginia. The State Bar's decision to bring charges against Kolibash, and the formal filing of those charges, also occurred in the Southern District. Finally, Kolibash was deposed and the Committee on Legal Ethics deliberated within the Southern District. We therefore find that the state action against Kolibash was pending, and Kolibash properly filed his petition for removal, in the Southern District of West Virginia. See 28 U.S.C. Sec. 1446 (Procedure for Removal).
 
 
 27
 For the foregoing reasons, removal was proper under 28 U.S.C. Sec. 1442(a)(1), and the district court erred in divesting itself of jurisdiction. We intimate no view, however, on the merits of the charges against Kolibash or on any defenses which may be available to him. We hold only that the circumstances of this case satisfy the requirements of Sec. 1442 and therefore entitle appellant to a federal proceeding in accordance with federal rules of procedure. The district court's remand order is hereby REVERSED.
 
 
 
 [1]
 The federal officer removal statute provides in relevant part:
 (a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
 (1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.
 28 U.S.C. Sec. 1442(a)(1).