Mary BECENTI, as Trustee for the Testamentary Trust known as "Randy's Laundry," and individually, Plaintiff–Appellant,

v.

Sheryl VIGIL and Raymond Brooks, Defendants–Appellees.

No. 88–2867.

United States Court of Appeals, Tenth Circuit.

April 23, 1990.

---

Bernice G. Muskrat, Albuquerque, N.M., for plaintiff-appellant.

Jacques B. Gelin and Edward J. Shawaker, Attys., Dept. of Justice, Washington, D.C. (Donald Carr, Acting Asst. Atty. Gen., William L. Lutz, U.S. Atty., Herbert A. Becker, Asst. U.S. Atty., Albuquerque, N.M., and Kathleen P. Dewey, Atty., Dept. of Justice, Washington, D.C., with Gelin on the brief), for defendants-appellees.

Before HOLLOWAY, Chief Judge, ANDERSON and EBEL, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Mary Becenti appeals the district court's order dismissing her action against Vigil and Brooks for lack of subject matter jurisdiction. Because implicitly the district court's order improvidently upheld the removal of this case from the Jicarilla Apache Tribal Court in which it was originally commenced, we vacate the district court's order and remand with directions to remand the case to the tribal court.

## BACKGROUND

This dispute arose over the administration of a loan obtained by Becenti's son for the purchase and operation of a laundry business located within the Jicarilla Apache Reservation. The loan was made by the tribal credit committee in 1982. Becenti's son died in August 1985 and his estate eventually sold his share of the business to a willing buyer who agreed to continue servicing the tribal loan. Becenti, who owned a ten percent interest in the laundry, brought this action after Brooks, a loan specialist employed by the Bureau of Indian Affairs, allegedly refused to accept payments proffered by the substitute obligor, and instructed the tribal credit committee to foreclose on the loan. Becenti commenced her suit in the Jicarilla Apache Tribal Court, claiming that Brooks, and his supervisor Vigil, had committed various wrongs against herself and the beneficiaries of a trust created by her son's will.

The complaint dated June 1, 1987 identified Brooks and Vigil as BIA employees and asserted that the "defendants, in their capacities as trustees for federal and tribal monies, have violated the trust responsibility and breached the standard of care owed to plaintiff as a member of the Jicarilla Apache Tribe."

On September 29, 1987 the government filed a petition for removal to the District Court for the District of New Mexico pursuant to 28 U.S.C. § 1442(a)(1). The removal petition stated that the complaint filed in tribal court sought injunctive and

monetary relief against individual defendants for actions taken under color of their office and in the performance of their official duties. The case was then removed to district court.

■ The government moved the district court to dismiss the case for lack of subject matter jurisdiction, for failure to join an indispensable party, and for failure to prosecute. The government asserted that Becenti's suit operated against the United States because it was a suit against federal officers for actions taken within the scope of their employment and should be dismissed on sovereign immunity grounds. Becenti opposed the government's motion and also moved the district court to "dismiss" the case for lack of removal jurisdiction.[1] On October 20, 1988 the district court entered its judgment dismissing the complaint for lack of jurisdiction on sovereign immunity grounds. The court found that sovereign immunity barred suit where the relief requested would operate against the sovereign and that any judgment against Brooks and Vigil would, in effect, be a judgment against the United States.

Becenti now appeals the district court's dismissal, contending that removal from the tribal court is impermissible under 28 U.S.C. § 1442, which provides for removal from state courts only. For the reasons discussed below, we agree.

## DISCUSSION

■ The government relies on the following provision authorizing removal in cases involving federal officials:

"A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending: ... Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office...."

28 U.S.C. § 1442(a)(1). This provision, like the removal jurisdiction granted in Sections 1441 and 1443(1) of Title 28, speaks only of removal of actions brought in "State" courts. Several courts have interpreted the "State court" language in both Section 1441 and 1443(1) as not encompassing actions commenced in courts other than those of the fifty states. *See, e.g., Guam v. Landgraf,* 594 F.2d 201, 202 (9th Cir.1979) ("We cannot read congressional references to an action in 'State' court as including an action in the courts of the Territory of Guam. When Congress has intended to extend § 1443(1) to an entity other than one of the fifty states, it has done so expressly.").

The government urges a broader interpretation of § 1442 based primarily on the essential reasons behind the grant of federal jurisdiction embodied in this section. As the Fourth Circuit has noted:

"[T]he central and grave concern of the statute is that a Federal officer or agent shall not be forced to answer for conduct assertedly within his duties in any but a Federal forum."

*North Carolina v. Carr,* 386 F.2d 129, 131 (4th Cir.1967).

We agree with the government's contention that the power to remove cases involving government officials is essential to our system of government. *Martin v. Hunter's Lessee,* 14 U.S. (1 Wheat.) 304, 363, 4 L.Ed. 97 (1816) (Johnson, J., concurring) (The federal government "must cease to exist whenever it loses the power of protecting itself in the exercise of its constitutional powers."). Thus we have stated that § 1442 should be interpreted broadly to fully protect the important governmental interests involved. *See City of Aurora ex rel. Colorado v. Erwin,* 706 F.2d 295, 296 (10th Cir.1983) (removal under § 1442 is a

---

1. Becenti's motion to dismiss on the grounds of improper removal was filed on August 2, 1988. She made this motion in her first substantive pleading to the district court. At the time of her motion to dismiss, 28 U.S.C. § 1447(c) provided "If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case...." (amended November 19, 1988). Although she delayed over ten months from the date of the removal petition to raise her objection, we find that she adequately preserved her right to raise the issue of the fundamental deficiency in the removal process. Likewise, although she couched her objection in terms of a motion to dismiss, she clearly described the deficiency in the removal procedure which warranted remand to the tribal court.

matter of considerable importance to the United States; the policy favoring removal " 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).' ") (quoting *Arizona v. Manypenny*, 451 U.S. 232, 242, 101 S.Ct. 1657, 1664, 68 L.Ed.2d 58 (1981), *quoting in turn, Willingham v. Morgan*, 395 U.S. 402, 407, 89 S.Ct. 1813, 1816, 23 L.Ed.2d 396 (1969)). The same risk of unwarranted interference by state courts into the operation of the federal government is present with regard to Indian tribal courts. The government must be free to protect itself from the delays and abuses which may arise from such local proceedings.

■ The question before us, however, is not whether Congress has the power to authorize removal of actions commenced in tribal courts against federal officials, but rather whether Congress has in fact done so. We must be careful not to expand the jurisdiction of federal courts beyond Congressional mandates. *See American Fire & Cas. Co. v. Finn*, 341 U.S. 6, 17, 71 S.Ct. 534, 542, 95 L.Ed. 702 (1951) ("The jurisdiction of the federal courts is carefully guarded against expansion by judicial interpretation...."); *Basso v. Utah Power & Light Co.*, 495 F.2d 906 (10th Cir.1974). With this in mind, we conclude that the statutory language referring to actions commenced in "State court" does not extend to an action in the Jicarilla Apache Tribal Court.

As the Ninth Circuit has noted, where Congress has intended to permit removal from courts other than state courts it has expressly said so. Thus Congress provided that the Superior Court of the District of Columbia is included among the "State" courts referenced in the provisions of Section 1441, 1442, and 1443. *See* 28 U.S.C. § 1451; *Guam v. Landgraf*, 594 F.2d at 201. Likewise, Congress has provided, in express terms, that actions commenced in the District Court for the District of Puerto Rico are removable under the federal removal statutes. *See* 48 U.S.C. § 864.

Congress did not necessarily intend by § 1442 to guarantee every federal employee sued in any court other than a United States district court an alternative federal forum in which to defend themselves. *See Mesa v. California*, 489 U.S. 121, 109 S.Ct. 959, 968–69, 103 L.Ed.2d 99 (1989) (discussing the distinction between "pure jurisdictional statutes" such as § 1442(a) and federal laws under which an action may arise so as to support Article III "arising under" jurisdiction.). The historical development of this provision amply demonstrates that Congress has at times provided some federal employees alternative federal forums while simultaneously leaving many others no such protection. Section 1442 slowly evolved from a very narrow exception tailored for a limited number of government officials. *See* H. Hart & H. Wechsler, *The Federal Courts and the Federal System* 1336–37 (2d ed. 1973).[2]

Throughout our history, Congress has expanded and restricted federal official removal jurisdiction as circumstances and relations with the states have changed. Although the need may arise to expand § 1442 to authorize removal from tribal courts, Congress has not yet seen fit to

2. The historical development of § 1442 federal official removal jurisdiction has been summarized:

"These four specialized grants of jurisdiction in § 1442(a) are the residue of a long series of enactments. The series begins in 1815. Prompted by New England's resistance to the War of 1812, Congress inserted in an act for the collection of customs duties a provision—of limited duration—for the removal to the federal circuit court of any suit or prosecution begun in a state court against federal officers or other persons as a result of enforcement of the act. The first permanent legislation in the series—and the antecedent of the last clause of § 1442(a)(1)—was the 'Force Bill' of 1833, passed in response to South Carolina's threats of nullification. This authorized the removal of all suits or prosecutions against officers of the United States or other persons on account of any acts done under the customs laws. Then, with the Civil War, came a wave of removal acts. In 1863, Congress authorized, for the period only of the rebellion, the removal of cases brought against the United States officers or others for acts committed during the rebellion and justified under the authority of the President or Congress. Soon afterward, permanent legislative policy was further developed by the extension of the removal provisions of the 'Force Bill' to cases involving the collection of internal revenue as well as import duties. What is now the last clause of § 1442(a)(1)

incorporate tribal court actions such as the one involved here in its grant of removal jurisdiction to the federal district courts. Until Congress authorizes the removal of such tribal court proceedings, the federal courts may not exercise jurisdiction over them. *Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat.) at 349 ("The time, the process, and the manner [of removal] must be subject to [Congress'] absolute legislative control.").

## CONCLUSION

Becenti's action was improvidently removed from the tribal court. We therefore vacate the district court's order and remand this case to the district court with directions to remand it to the Jicarilla Apache Tribal Court.

continued through successive codifications to be thus limited to cases growing out of the revenue laws until 1948...." When the latest revision was enacted, "No argument apparently was needed to induce Congress to generalize a principle of federal protection which was first invoked in times of crisis and thereafter always limited to special situations deemed to present special needs."
H. Hart & H. Wechsler, *The Federal Courts and the Federal System* 1335–37 (2d ed. 1973).