**Thomas Pela, Appellant,**
v.
**Peabody Coal Company, Appellee.**
**Decided September 28, 1990**

---

## OPINION

Before TSO, Chief Justice, AUSTIN and CADMAN (sitting by designation), Associate Justices.

Catherine M. Van Maerssen, Esq., and Otto H. Van Maerssen, Esq., DNA-People's Legal Services, Inc., Tuba City, Arizona, for the Appellant; and C. Benson Hufford, Esq., Flagstaff, Arizona, for the Appellee.

Opinion delivered by AUSTIN, Associate Justice.

The issues in this appeal are as follows: 1) whether the Navajo Nation courts have jurisdiction to hear federal ERISA claims; 2) whether the federal removal statute applies to Navajo Nation courts; and 3) whether comity is an appropriate reason for the Navajo Nation court to decline jurisdiction in this case.

## I. Facts

Appellant Thomas Pela, plaintiff below, is a member of the Hopi Indian Tribe and resides within the territorial jurisdiction of the Navajo Nation in Tuba City, Arizona. He was employed by appellee Peabody Coal Company from April, 1978 until June, 1987 at its Kayenta Mine near Black Mesa, Arizona. The mine is located on tribal trust land within the territorial jurisdiction of the Navajo Nation. According to Pela, Peabody forced his resignation by denying him leave to participate in Hopi religious ceremonies despite a written agreement to grant such leave. Peabody contends that Pela resigned of his own accord.

Pela filed suit in the Tuba City District Court alleging four causes of action: breach of oral agreement; common law fraud; violation of the federal American Indian Religious Freedom Act, 42 U.S.C. § 1966; and violation of the federal Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1132(a)(l)(B) and 1140. Peabody denied all charges and filed a petition to remove the entire case to federal court for the District of Arizona on the grounds of federal question jurisdiction.

In the Navajo court, Pela contested Peabody's notice of petition to remove,

alleging that the federal removal statute, 28 U.S.C. § 1441, does not apply to tribal courts. The Tuba City District Court agreed and ordered that the case proceed in Navajo court. Peabody then moved the court to reconsider its order or, in the alternative, dismiss the case for lack of subject matter jurisdiction on the ground that tribal courts may not hear ERISA claims. On May 12, 1989, the district court granted the motion for reconsideration and then dismissed the entire case, ruling that it is exercising "its discretion to decline jurisdiction over this matter in deference to federal law." Order entered May 12, 1990. Pela appealed that order.

## II. Discussion

The trial court's order is vague as to the exact grounds for its dismissal of the case. We find that the case should not have been dismissed. We will examine each potential basis for the dismissal.

Two federal statutes are at issue in this appeal: the removal statute, 28 U.S.C. § 1441(a); and the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(e)(1). Neither statute mentions Indian tribes. On the ERISA statute, we must decide whether Congress, by granting concurrent state and federal jurisdiction over certain ERISA claims, has divested tribal courts of jurisdiction to hear those claims. Regarding the removal statute, we must decide whether the language authorizing removal from state court to federal court also authorizes removal from tribal court to federal court.

The applicability of federal statutes to Indian tribes "ultimately depends on the purposes of the statutes and treaties at issue, and specific rules cannot be set out to anticipate every case." F. Cohen's *Handbook of Federal Indian Law* 286 (1982 ed.). We agree with the approach pronounced by the United States Supreme Court to determine tribal court jurisdiction: "[T]he existence and extent of a tribal court's jurisdiction will require a careful examination of tribal sovereignty, the extent to which the sovereignty has been altered, divested, or diminished, as well as a detailed study of relevant statutes, Executive Branch policy as embodied in treaties and elsewhere, and administrative or judicial decisions." *National Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 855-856 (1985).

The jurisdiction of the Navajo courts is not derived from a federal grant of power, but rather comes from the Navajo Nation's inherent sovereignty. *Navajo Tribe v. Orlando Helicopter Airways, Inc.*, 1 Nav. R. 40 (1972). The Navajo Tribal Council gave the Navajo courts power "to reserve to itself its own reasonable and guided interpretation of federal law, and [to] exercise that power in an independent fashion." *Manygoats v. General Motors Accept. Corp.*, 4 Nav. R. 94, 96-97 (1983). Navajo courts have decided cases in which federal laws were the primary focus. See as examples, *Estate of Jumbo*, 6 Nav. R. 171 (1990) (Federal Employees' Group Life Insurance Act, 5 U.S.C. § 8705(a)), and *Billie v. Abbott*, 6 Nav. R. 66 (1988) (Aid to Families with Dependent Children Act, 42 U.S.C. § 601).

Indian tribes retain all those attributes of sovereignty which have not been

withdrawn by federal statute or treaty or by virtue of their dependent status. *Iowa Mutual Ins. Co. v. La Plante*, 480 U.S. 9, 14 (1987); *Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191 (1978); *See also Billie v. Abbott*, 6 Nav. R. at 68-70. We therefore must examine the legislative history of the federal statute at issue and the language expressed on the face of the statute to determine whether Congress has divested tribal courts of jurisdiction.

Each federal statute will be individually examined as the need arises to determine its applicability to the Navajo Nation courts. The principle that Navajo courts derive their power from inherent Navajo sovereignty merits great consideration. In interpreting federal statutes, situations may arise in which Navajo courts may benefit from treatment like state courts. In others they may not. But in each case, care must be taken to ensure that the Navajo Nation courts retain their unique character as courts of a sovereign Indian nation. Navajo sovereignty, tradition and culture must be preserved.

## A. ERISA Claim

For most actions brought under ERISA, Congress has provided for the exclusive jurisdiction of federal courts. 29 U.S.C. § 1132(e) (1). However, the section under which Pela sued, 29 U.S.C. § 1132(a) (1)(B), is subject to the "concurrent jurisdiction" of "[s]tate courts of competent jurisdiction and district courts of the United States...." 29 U.S.C § 1132(e) (1). Section 1132(a) (1) (B) provides as follows: "A civil action may be brought by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" Generally, plan means an employee's benefit plan such as a pension plan.

The question is whether Congress' grant of concurrent jurisdiction to state and federal courts in 29 U.S.C. § 1132(e) (1), without mentioning tribal courts, is a divestiture of tribal court jurisdiction over actions brought under 29 U.S.C. § 1132(a) (1)(B). For the reasons set forth below, we hold that as used in the ERISA statute, the grant of concurrent state and federal jurisdiction does not bar tribal courts from hearing such actions.

The legislative history of ERISA offers no guidance as to congressional intent regarding tribal court jurisdiction. H.R. Conf. Rep. No. 1280, 93rd Cong., 2nd Sess. *reprinted in* 1974 U.S. Code Cong. & Admin. News 5038. Nowhere does it mention tribal court jurisdiction. The legislative history of ERISA is therefore silent as to whether Congress intended to divest tribal courts of jurisdiction over all ERISA claims. Normally, "the proper inference from [congressional] silence is that the [tribal] sovereign power remains intact." *Iowa Mutual*, 480 U.S. at 18. (quoting *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 149, n. 14 (1982)).

Congress has expressly reserved to the federal courts exclusive jurisdiction over most claims brought under ERISA. The reason for this is Congress intended "that the United States regulate the field of employee benefit plans eliminating the threat of conflicting and inconsistent *local* regulation." *Marshall v. Chase*

*Manhattan Bank*, 558 F.2d 680, 683 (2nd Cir. 1977) (emphasis added). By granting federal courts exclusive jurisdiction, Congress wanted "to create a body of federal substantive law regulating pension plans." *Authier v. Ginsburg*, 757 F.2d 796, 799, n. 5 (6th Cir. 1985). Thus, in those areas of ERISA under exclusive federal court jurisdiction, Congress undoubtedly wanted uniformity in enforcement and regulation, and, therefore, the state and tribal courts have no jurisdiction in those areas.

Congress, however, did not require uniformity of enforcement and regulation under 29 U.S.C. § 1132(a) (l)(B). Pursuant to section 1132(a) (l)(B), one may sue in a non-federal court, and have the court apply local law, to recover benefits, enforce benefits or clarify rights to future benefits, under a plan. Pela sued under this provision and we see no reason why a Navajo Nation court should not provide him or any party with relief using Navajo or non-Navajo law. We believe Congress has provided for use of non-federal courts and of local law to decide claims brought under section 1132 (a) (1) (B).

Congress has consistently encouraged and promoted tribal self-government. Congress is aware that "[t]ribal courts play a vital role in tribal self-government ... and [it] has consistently encouraged their development." *Iowa Mutual*, 480 U.S. at 14-15. Consistent with congressional policy, tribal courts presumptively have civil jurisdiction over reservation activities unless affirmatively limited by treaty or a federal statute. *Id.* at 18; *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 60 (1978). Without clear expression of congressional intention to divest, Navajo courts have jurisdiction to hear ERISA claims arising under section 1132(a) (1) (B).

The language in 29 U.S.C. § 1132(e) (1), while granting concurrent jurisdiction, does not affirmatively divest tribal courts of jurisdiction to hear ERISA claims arising under 29 U.S.C § 1132(a) (1) (B) for several reasons. First, jurisdiction to hear cases arising under section 1132(a) (1) (B) is not exclusive to federal courts. Local courts of competent jurisdiction, including state and tribal courts, are permitted to use local law to enforce plan provisions. Although ERISA claims are created by federal statute, they have their source in some underlying common-law cause of action. Navajo Nation trial courts have jurisdiction over common-law causes of action. Thus, Navajo courts have jurisdiction to hear ERISA claims despite ERISA being created by federal statute.

Second, the exact wording of the statute is "concurrent jurisdiction." If Congress had intended to divest tribal courts of jurisdiction over claims arising under section 1132(a) (1) (B), while giving state and federal courts such jurisdiction over such claims, the wording would read "exclusive concurrent jurisdiction." This would mean that Congress intended only federal and state courts to share concurrent jurisdiction to the exclusion of others.

Third, we have not found express language either on the face of the statute or in its legislative history to support the view that Congress intended to divest tribal courts of jurisdiction to hear ERISA claims arising under 29 U.S.C. §

1132(a) (l)(B).

Fourth, ERISA claims brought in Navajo Nation courts very likely will be decided using either local state or federal court decisions as guidance if no Navajo law is available. We doubt that Navajo Nation court decisions on ERISA will deviate substantially from the decisions of any other jurisdiction.

Finally, policywise, to interpret the ERISA statute as barring tribal court jurisdiction would establish damaging precedent. It would mean that whenever Congress gives concurrent jurisdiction to the state and federal courts, and does not mention tribal courts, the tribal courts lack jurisdiction. This would seriously undermine the ability of the Navajo Nation courts to apply federal law as mandated in 7 N.T.C. § 204 (1985). Also, the federal policy of strengthening tribal institutions to the extent of self sufficiency, and the Navajo Nation's policy of exercising Navajo Nation court jurisdiction to the permissible limits, as a means of protecting its citizens, resources, and sovereignty, would be seriously undermined.

The Seventh Circuit has held that the ERISA statute at issue in this appeal applies to an Indian tribe as employer. *Smart v. State Farm Ins. Co.*, 868 F.2d 929 (7th Cir. 1989). The tribe in *Smart* employed tribal members at a health center it owned and operated within the boundaries of its reservation. If the Ninth and Tenth Circuits adopt *Smart*, then a holding of no Navajo court jurisdiction over ERISA claims would mean that a Navajo employed by the Navajo Nation would have to sue in federal or state court to enforce his rights under a statute with which the Navajo Nation is forced to comply. The mere failure by Congress to provide explicitly for tribal court jurisdiction is not enough to justify the conclusion that Congress intended such an encroachment on the ability of the Navajo Nation to regulate its own purely internal affairs.

## B. Removal

The federal removal statute provides that a defendant may remove to a United States district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction...." 28 U.S.C. § 1441(a). The underlying question is whether Congress intended actions to be removable from tribal courts as well.

There has been a removal statute since the Judiciary Act of 1789. Congress has expanded and contracted its scope of application frequently over the years, making it difficult to pinpoint the statute's exact purpose. *See generally*, C. Wright, *Law of Federal Courts* 148-54 (3d ed. 1976). Protection of defendants from local bias appears to be one purpose for the statute's enactment. However, that purpose, standing alone, carries little weight in the tribal context. The United States Supreme Court has ruled that tribal courts are not open to attack based on allegations of local bias. *Iowa Mutual*, 480 U.S. at 19.

Congress appears to have been wholly concerned with removal of cases from state courts to federal courts, and not from tribal courts, when it enacted the

removal statute. *Law of Federal Courts* at 148. For sure, Congress was not concerned with removal from tribal courts, because in 1789, "tribal courts in the Anglo-American mold were virtually unknown...." *Iowa Mutual*, 480 U.S. at 17. If Congress was concerned only with state to federal removal, as we believe it was, then when it speaks of "state" courts in the removal statute, it must mean only those courts belonging to the fifty states. It is difficult to draw any other conclusion because neither the statute itself nor its legislative history illuminate congressional intent relative to removal of cases from tribal courts. Thus, specific congressional intent that would support a ruling that cases can be removed from tribal courts to federal courts is lacking.

Congress has periodically addressed the issue of removal of cases from non-state courts. When Congress wanted federal courts to have jurisdiction over cases removed from non-state courts, it passed a law specifically saying so. Congress enacted 48 U.S.C. § 864 and 28 U.S.C. § 1451 for these purposes. The first authorizes removal from Puerto Rican courts to federal court and the second authorizes removal from a District of Columbia court to federal court.

Courts that have considered the issue of removal from non-state courts have ruled that where there is no mention of a particular non-state court, such as tribal courts or Guamian courts, the removal statute does not apply. *Becenti v. Vigil*, 902 F.2d 777 (10th Cir. 1990); *Becenti v. General Electric Credit Corp.*, No. 85-1672-M (D.N.M. 1986); *Guam v. Landgraf*, 594 F.2d 201 (9th Cir. 1979). We agree with the reasoning in these cases. Therefore, *Mariano v. Arviso*, 3 Nav. R. 196 (1981), and any other case that advocates for removal from Navajo court to federal court, is overruled.

In *Becenti v. Vigil, id.*, the issue was whether a suit against federal officials in tribal court could be removed to federal court under 28 U.S.C. § 1442(a) (1) . This section permits removal to federal court of a civil suit commenced in "state court" against a federal official. The essential reason for this section's grant of federal jurisdiction is so that federal officials are not forced to answer for conduct resulting from their official duties in any but a federal forum. *North Carolina v. Carr*, 386 F.2d 129, 131 (4th Cir. 1967). Despite this need to protect the federal government's interest, the court in *Becenti v. Vigil* held that the term "state court" did not include tribal courts. If the compelling governmental interest found in section 1442 is not sufficient to justify removal from tribal court, we see no reason why section 1441 should be accorded greater deference.

Federal courts are courts of limited jurisdiction. *Chase Manhattan Bank v. S. Acres Devel. Co.*, 434 U.S. 236, 239-240 (1978). Only Congress has the authority to grant whatever jurisdiction the federal courts may exercise. U.S. Const. art. III, § 1. In determining whether they have removal jurisdiction, federal courts have strictly construed the removal statute and have resolved all doubts against removal. 32B Am. Jur. 2d *Federal Practice And Procedure* § 2406 (1982).

In the past, at least one Navajo court has assumed that federal courts have jurisdiction over cases removed from Navajo courts, without first examining the

removal statute, by sending a case to federal district court. See *Mariano v. Arviso*, 3 Nav. R. 196. The Navajo courts have no authority to expand the jurisdiction of the federal courts. Only Congress has that authority. *Mariano* is in error and is thus overruled.

Peabody contends that if this Court refuses to permit removal, then this Court would be limiting the rights of Navajo tribal court defendants. We disagree. The right to remove is a statutory right governed wholly by federal law. Defendants who do not satisfy the federal removal statute obviously have no common-law right to remove.

The impact that removal of cases from Navajo courts to federal courts will have is of great importance. Essentially, removal of every case that presents a question of federal law would substantially undermine the Navajo Nation's ability to regulate the activities of non-members on tribal trust lands, "an important part of tribal sovereignty." *Iowa Mutual*, 480 U.S. at 18. In *Iowa Mutual*, the Supreme Court declined to hold that the federal diversity statute, 28 U.S.C. § 1332, which also does not mention tribal courts, allowed an insurance company to institute the same action in federal court that was already pending in tribal court. *Id.* The Court said, "Civil jurisdiction over [the] ... activities [of non-Indians on reservation land] presumptively lies in the tribal courts unless affirmatively limited by a specific treaty provision or federal statute." *Id.*

Very likely, application of the removal statute would also interfere with the governance of purely Navajo matters. For instance, a suit on a Navajo cause of action with an attendant federal question between Navajo parties living within the territorial jurisdiction of the Navajo Nation would be removed to federal court. Surely in this situation, review should always be by Navajo courts, which are familiar with Navajo lifestyle, instead of "by faraway federal courts unfamiliar with Navajo customs and laws...." *Halona v. MacDonald*, 1 Nav. R. 189, 205 (1978).

The United States Supreme Court has said, "With the Indians ... [t]hey [are] ... regarded as having a semi-independent position when they preserved their tribal relations; not as states; not as Nations, not as possessed of the full attributes of sovereignty, but as a separate people, with the power of regulating their internal and social relations...." *United States v. Kagama*, 118 U.S. 375, 381-382 (1886). This is a viable principle applicable in this case. Underlying Pela's suit are factual allegations involving Indian (Hopi) tribal religious tradition. Given that religion is central to Native American culture, a tribal court is indeed in a better position to understand a suit on religious grounds than either a state or federal court.

For the reasons set forth above, we hold that the federal removal statute, 28 U.S.C. § 1441(a), does not authorize removal of cases from Navajo Nation courts to federal district courts.

## C. Comity

The district court's order states that "the Court hereby exercises its discretion to decline jurisdiction over this matter in deference to federal law." Order dated May 12, 1989. If the district court considers itself to have jurisdiction, then the true basis for its decision appears to be comity. The issue then is whether the doctrine of comity applies in this case. We hold that the doctrine of comity does not apply unless there is an action properly pending in the courts of another sovereign. The instant case is not properly pending in federal court because it cannot be properly removed.

In *Hubbard v. Chinle School District*, 3 Nav. R. 167 (1982), the Navajo Nation Supreme Court upheld the Chinle District Court's application of the doctrine of comity. The case involved an employment suit against the Chinle School District, which the Court found to be a branch of the government of the State of Arizona. In the interests of good relations with another sovereign, the Supreme Court allowed the district court to decline jurisdiction. *Hubbard* is not applicable here because Peabody is not another sovereign with whom the Navajo Nation wants to promote good relations.

Comity is a doctrine derived from international law whereby one sovereign voluntarily relinquishes jurisdiction to another sovereign. An example of an appropriate situation in which to apply the doctrine is the *Hubbard* fact pattern where the defendant was another sovereign. However, proper respect for tribal sovereignty dictates that even in cases similar to *Hubbard*, the doctrine of comity should be sparingly used by the Navajo courts. Use of the doctrine is inappropriate where there is no action properly pending in another sovereign's court.

Both appellant and appellee cited federal cases in which comity was used. However, in those cases, another court had concurrent jurisdiction. In Pela's case, the federal court does have original jurisdiction concurrent with the Navajo court, but *not* removal jurisdiction. To allow the district court to refuse jurisdiction is just another way of legitimizing removal from tribal court. It might have been different if this action had been brought in federal court before plaintiff brought it in Navajo court. Under those circumstances, there would be a stronger argument that the Navajo Nation court should terminate its proceedings based on comity.

We hold that the Tuba City District Court's application of the doctrine of comity was inappropriate in this case.

## III. Decision

For the reasons stated above, we hold that the Tuba City District Court should not have dismissed the case. We therefore reverse and remand for a determination on the merits.